UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHROMA CARS, LLC and MAX
ALLOWANCE, LLC,

           Plaintiffs,

   v.                                              CAUSE NO. 3:21-CV-825 DRL-MGG

AMANDA HARRIS,

           Defendant.

OPINION AND ORDER

As alleged, Amanda Harris departed her employ at Chroma Cars, LLC and began competing under circumstances that drew the company's ire. Both Chroma and its affiliate, Max Allowance, LLC, claim that she misappropriated trade secrets in violation of the Defend Trade Secrets Act (DTSA) and Indiana Uniform Trade Secrets Act (IUTSA), breached her employment agreement, breached her fiduciary duties of loyalty and good faith, committed theft and conversion, and tortiously interfered with Chroma's business relationships and contracts. Today she asks the court to dismiss certain of these claims under Federal Rule of Civil Procedure 12(b)(6). The court dismisses only the tortious interference claims (count 7) and denies the motion otherwise.

BACKGROUND

For purposes of this motion, these facts assume the truth of the well-pleaded allegations within the amended complaint. Chroma is an automotive marketing company that offers digital marketing solutions directly to customers, licenses these solutions to other companies, and resells solutions originally created by others. Max (a Chroma affiliate) is an automotive software design company.

Chroma designed and developed a software and conversion tool for automating and optimizing automotive vehicle trade-in services called the "Max Allowance IP."[1] Chroma assigned all its interest in this software to Max in December 2020. Chroma no longer owned the Max Allowance IP but continued to host and maintain the software.

In 2010, Amanda Harris began working for Chroma as an independent contractor. Four years later, Chroma hired her as a senior account representative. She was later promoted to vice president of operations. She was entrusted with customer relationships and business goodwill. She had direct communications and relationships with Chroma's resellers, vendors, and customers, and knew the company's employees, processes, and policies. She had a thorough understanding of Chroma's trade secrets and confidential information, including product features, pricing, customer lists, historical customer purchases, unique customer protocols, confidential customer decisionmaking intel, and other trade secrets to formulate competitive bids for digital marketing work. She also had knowledge of and access to the Max Allowance IP.

On April 1, 2021, Chroma gave Ms. Harris notice that her employment would be terminated in thirty days. The notice letter reminded her of the confidentiality and non-solicitation obligations in her employment agreement. Shortly thereafter, as alleged, Ms. Harris used her personal Gmail account to open unauthorized Google Ads accounts for Chroma customers, shared Chroma's Google My Business customer list with her personal email account, provided her personal Gmail account with access to Chroma's Google Drive to transfer confidential information, and communicated with Chroma's customers about continuing their business with her after her employment ended.

---

[1] Chroma and Max distinguish mentions of the company "Max Allowance" with the software "Max Allowance IP" by either referring to the software as "Max Allowance IP," "MAX Allowance IP," "MAX Allowance," or "Max Allowance product." For consistency, the court will refer to the software as "Max Allowance IP" unless using a direct quote from the amended complaint.

Learning this, Chroma immediately terminated her employment on April 6, 2021. Without authorization and despite instruction otherwise, Ms. Harris kept her company laptop and failed to give Chroma access to Chroma Google Documents accounts, folders, and files. Chroma says she used the information to solicit customers and interfere with its business relationships and contracts.

In May 2021, Ms. Harris allegedly used her personal relationships with Chroma's customers to weaken customer relations and forge business relationships. She introduced Sharon Shellinger, the e-commerce director of Ewald Automotive Group (a Chroma customer), to Tre Mikel Hall, the principal of Local Werks (a reseller of Chroma products and competitor on other products). Afterwards, Ms. Shellinger left her employment at Ewald Automotive Group to join Local Werks. Additionally, Ms. Harris used her relationships from her employment at Chroma to induce Local Werks to end its business with Chroma as a "Google My Business Inventory Listing" reseller. Mr. Hall and Local Werks also made attempts to interfere with Chroma's contract with DBA Media, LLC by encouraging the company to violate its contractual non-competition obligations.

Ms. Harris established Kings Pivot Corporation. Chroma alleges the company was premised on the confidential information and business relationships she obtained through her employment with Chroma. In July 2021, she began officially working for Local Werks as a senior strategist where Chroma says she used its confidential information and trade secrets to solicit its customers and interfere with its business relationships. Ms. Harris used her connections with Chroma's customers to sell them Local Werks' products.

Michael Frazer, Chroma's managing member, became aware of Ms. Harris' alleged disclosure of trade secrets and confidential information when someone from Local Werks approached him about selling Max and the rights to the Max Allowance IP to Local Werks. Based on these statements, it was clear to Mr. Frazer that Local Werks had knowledge of the Max Allowance IP's user base, size, and revenue. Ms. Harris was one of three Chroma executives with this knowledge and the only one

3

working with Local Werks. Chroma says Ms. Harris disclosed this information to Local Werks. Ms. Harris' disclosure of the trade secrets and confidential information relating to the Max Allowance IP allowed Local Werks to recreate features of Max Allowance IP through its "Trade Werks" and "Acquisition Werks" products.

Chroma and Max allege they have suffered significant economic damages from lost revenue, misuse of trade secrets and other confidential information, lost business, and harm to customer relationships.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

## DISCUSSION

The amended complaint includes six counts: misappropriation of trade secrets under the DTSA (count 1); misappropriation of trade secrets under the IUTSA (count 2); breach of contract (count 3); breach of fiduciary duties of loyalty and good faith (count 4); theft and conversion (count

5); and tortious interference with business relationships and contracts (count 7).[2] Ms. Harris argues that counts 1 and 2 as to Max and counts 4, 5, and 7 as to Chroma fail to state a claim.

      A.      *The Amended Complaint Alleges Plausible Claims under the DTSA and IUTSA.*

In counts 1 and 2, Chroma and Max allege that Ms. Harris revealed their trade secrets to Local Werks, Kings Pivot Corporaton, and others without their consent. In her partial motion to dismiss, Ms. Harris argues for the dismissal of these claims as to Max because she says there is no allegation that she misappropriated the Max Allowance IP. In reply, her argument shifts to argue that the facts pleaded fall short of a reasonable inference of actual or threatened misappropriation rather than maintaining the position that no facts are pleaded at all.

The DTSA authorizes "[a]n owner of a trade secret that is misappropriated" to bring a civil suit under federal law. 18 U.S.C. § 1836(b)(1). The IUTSA governs claims for misappropriation of trade secrets under Indiana law. Ind. Code. § 24-2-3-1. The elements of a claim under the DTSA and IUTSA are similar; each requires the existence of a trade secret and its misappropriation. *See* 18 U.S.C. §§ 1836(b)(1), 1839; Ind. Code §§ 24-2-3-2, 24-2-3-3; *see, e.g., Magnesita Refractories Co. v. Mishra*, 2018 U.S. Dist. LEXIS 206856, 38-42 (N.D. Ind. Dec. 7, 2018).

Both the federal and state schemas define "trade secret," *see* 18 U.S.C. § 1839; Ind. Code § 24-2-3-2, and both require a plaintiff to identify the trade secret and prove a trade secret exists. *See, e.g., Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001) (IUTSA) ("[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets

---

[2] The amended complaint separately tries to articulate a claim for injunctive relief in count 6. Injunctive relief is a remedy, not a claim. *See Onyango v. Downtown Entm't, LLC*, 525 F. Appx. 458, 460 (7th Cir. 2013). The court may "disregard labels and treat pleadings for what they are." *United States v. Griffin*, 782 F.2d 1393, 1399 (7th Cir. 1986); *see* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Baltimore & Ohio Chi. Terminal R.R. Co. v. Wis. Cent. Ltd.*, 154 F.3d 404, 406-07 (7th Cir. 1998) (converting defense to counterclaim). The court accordingly treats the substantive allegations in count 6 as part of the trade secret counts and converts the claim to an injunction as a prayer for this remedy vis-à-vis these other claims. The court dismisses count 6 as a separate claim or "count."

and carry the burden of proving that they exist."). Here, the parties assume for purposes of the motion that the Max Allowance IP constitutes a trade secret and only debate whether the amended complaint plausibly alleges its misappropriation.

A party must show misappropriation—likewise defined by statute—to recover under both the DTSA and IUTSA. *See* 18 U.S.C. § 1839(5)(A)-(B); Ind. Code § 24-2-3-2; *see, e.g., Howmedica Osteonics Corp. v. DJO Glob., Inc.*, 2018 U.S. Dist. LEXIS 227687, 20 (S.D. Ind. Mar. 15, 2018) (DTSA and IUTSA both "predicate liability on an act of misappropriation"). The DTSA defines misappropriation as either the "acquisition of a trade secret of another . . . by improper means" or the "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5)(A)-(B). The IUTSA defines misappropriation as the "disclosure or use of a trade secret without consent by a person who [u]sed improper means" or "knew or had reason to know that [her] knowledge of the trade secret was [a]cquired under circumstances giving rise to a duty to maintain secrecy or limit its use," or by someone who "owed a duty to the person seeking relief to maintain its secrecy or limit its use." Ind. Code. § 24-2-3-2. Actual or threatened misappropriation of trade secrets may be enjoined. 18 U.S.C. § 1836(b)(3)(A)(i); Ind. Code § 24-2-3-3(a).

In seeking to dismiss the trade secret claims, Ms. Harris narrowly argues that because Max failed to allege misappropriation of the Max Allowance IP, counts 1 and 2 fail to state a claim. For today, she does not contest that the Max Allowance IP was acquired by improper means or disclosed without consent, *see* 18 U.S.C. § 1839(5)(A)-(B); Ind. Code § 24-2-3-2, but merely that there are no detailed allegations of actual or threatened misappropriation.

In the amended complaint, Max alleges that it received by assignment the rights to the Max Allowance IP. The company protected the software with restricted access and technology. Only a few employees had knowledge of this trade secret information, including Ms. Harris. As alleged, Ms. Harris disclosed trade secrets, including the Max Allowance IP user base, size, and revenue to Local Werks

6

that then allowed Local Werks to replicate features of the Max Allowance IP. Ms. Harris was the only former Chroma executive working with Local Werks. The amended complaint alleges that Ms. Harris disclosed this trade secret information to Local Werks. In both counts 1 and 2, Max alleges that Ms. Harris revealed this trade secret information to Local Werks and Kings Pivot Corporation (her company) without Max's consent. Max then alleges that it sustained damages caused by her misappropriation of such trade secrets. These allegations make the claim of misappropriation plausible; indeed, the facts fit squarely within the statutory definitions of misappropriation.

Max need only plead facts, taken as true, that plausibly show actual or threatened misappropriation of the Max Allowance IP. They needn't be any more detailed than they are. *See Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp.*, 550 U.S. at 570; *see, e.g., Hartford Steam Boiler Inspection & Ins. Co. v. Campbell*, 2021 U.S. Dist. LEXIS 62332, 14-15 (S.D. Ind. Mar. 31, 2021). Similar to the alleged misappropriation in *Campbell*, Max alleges specific categories of trade secrets (the Max Allowance IP's user base, size, and revenue) that Ms. Harris shared with a specific individual and company (Tre Mikel Hall at Local Werks) demonstrated by two tangible occurrences (Mr. Hall's conversation with a Chroma representative and Local Werks' replication of the Max Allowance IP features), all disclosed without Max's consent (consistent with statutory definition). This extends well beyond mere possession of trade secrets or pure suspicion of misappropriation. *See Campbell*, 2021 U.S. Dist. LEXIS 62332 at 15. Max thus plausibly states a claim under both the DTSA and IUTSA.

    B.    *Chroma Pleads a Fiduciary Duty Claim That Hasn't Been Preempted by the IUTSA.*

In count 4, Chroma alleges that Ms. Harris breached her fiduciary duties of loyalty and good faith by directly and indirectly soliciting the company's customers, referral sources, and contracts. Ms. Harris says the IUTSA preempts this claim—but not entirely so, at least based on this pleading.

In 1982, the General Assembly enacted the IUTSA "to make uniform the law" of trade secrets "among states enacting the provisions of this chapter." Ind. Code § 24-2-3-1(b); *see also HDNet LLC*

*v. N. Am. Boxing Council*, 972 N.E.2d 920, 922-23 (Ind. Ct. App. 2012), *trans. denied,* 980 N.E.2d 322 (Ind. 2012). To effectuate its aim, the IUTSA "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." Ind. Code § 24-2-3-1(c). The General Assembly worded this preemption provision stronger than the one within the uniform act on which it was based. *Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1033 (Ind. 2004).

Indiana law construes IUTSA preemption broadly, approving a view that the IUTSA not just governs trade secret misappropriation but also "abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (*e.g.* idea misappropriation, information piracy, theft of commercial information, etc.),'" including claims that "merely outline[] another allegation of civil misappropriation of [a plaintiff]'s ideas." *HDNet LLC*, 972 N.E.2d at 924-25, 927 (citation omitted); *cf. AGS Capital Corp. v. Prod. Action Int'l, LLC*, 884 N.E.2d 294, 308-09 (Ind. Ct. App. 2008) (finding no preemption of civil RICO claim). Claims "arising out of wrongs distinct from pure information piracy survive passage of the trade secret statute." *HDNet LLC*, 972 N.E.2d at 925 (citation omitted); *accord Wagner-Meinert Eng'g, LLC v. TJW Indus., Inc.*, __ F. Supp.4th __, 2022 U.S. Dist. LEXIS 33349, 16-17 (N.D. Ind. Feb. 25, 2022); *Genesys Telecoms. Labs., Inc. v. Morales*, 2019 U.S. Dist. LEXIS 191660, 44-46 (S.D. Ind. Nov. 5, 2019)).

Three months ago, the court addressed this very preemption issue for a fiduciary duty claim and found that the pleading there plausibly adumbrated such a claim without merely resting on the misappropriation of trade secrets. *See Wagner-Meinert*, __ F. Supp.4th __, 2022 U.S. Dist. LEXIS 33349 at 16-17. Like that case, the amended complaint here posits at least one such claim that falls outside the scope of the IUTSA's preemption provision.

Under Indiana law, employees owe fiduciary duties to their employers. *See N. Ind. Pub. Serv. Co. v. Bloom*, 847 N.E.2d 175, 187 (Ind. 2006). "Prior to [her] termination, an employee must refrain from actively and directly competing with [her] employer for customers and employees and must

8

continue to exert [her] best efforts on behalf of [her] employer." *Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1070 (Ind. Ct. App. 2007) (quoting *Potts v. Review Bd. of the Ind. Emp. Sec. Div.*, 475 N.E.2d 708, 712 (Ind Ct. App. 1985)).

Chroma generally says Ms. Harris breached her fiduciary duty by directly and indirectly soliciting the company's customers, referral sources, and contracts. This appears to have taken three forms: (1) on or before April 6, 2021, she competed, while still employed with Chroma, by communicating with the company's customers about doing business with these customers once she left Chroma; (2) after May 21, 2021, working with her entity Kings Pivot Corporation, she used trade secrets and confidential information to solicit Chroma's customers, referral sources, and contracts; and (3) after July 1, 2021, when she became employed at Local Werks, she once more used confidential information to solicit Chroma's customers [ECF 13 ¶¶ 22, 27-28, 31].

The facts that surround the general allegation of customer and referral source solicitation in count 4 hinge on the use of trade secrets or other confidential information within the scope of *HDNet* only in the last two instances. Chroma characterized its customer lists as "proprietary and closely guarded" [*id.* ¶ 21], but Ms. Harris has not argued or established that a customer list or other protectible information was used, or that mere knowledge of a customer's identity would constitute a trade secret or confidential information such that her solicitation of customers prior to her termination, as she competed with her employer, would be preempted. In this regard, her fiduciary duty claim rests on the act of solicitation or wrongful communications—improper competition—rather than the misuse of confidential information. *See Inst. for the Int'l Educ. of Students v. Chen*, 380 F. Supp.3d 801, 810 (S.D. Ind. 2019) (because misappropriation of trade secrets or other confidential information wasn't the "gravamen" of the claim, but merely part of the various underlying factual allegations, it wasn't preempted). Chroma thus states one plausible non-preempted theory of a fiduciary duty breach.

Subset theories within this claim may concern the misappropriation of trade secrets or other confidential information, but not all. Accordingly, the court cannot grant the motion to dismiss—not when at least one legal theory for the claim has been plausibly pleaded outside the IUTSA. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissal of parts of claims," differentiating such a motion from one for summary judgment). The court thus denies the motion to dismiss count 4.[3]

C. *The Tortious Interference Claims (Count 7) Must Be Dismissed.*

Chroma advances two separate claims in count 7—a tortious interference with business relations claim and a tortious interference with a contract claim. Ms. Harris mounts a two-fold attack in her motion to dismiss: that Chroma has not plausibly pleaded either tortious interference claim and, even if so, that the IUTSA would preempt any claim that might exist.

In the federal system of notice pleading, the amended complaint need only plead facts sufficient to put Ms. Harris on notice of the claim against her. "[T]he federal courts require notice pleading, not fact pleading complete with all the minutiae. A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case." *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 942 (7th Cir. 2020) (quotations and citations omitted); *see also Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Plaintiffs need not lard their complaints with facts; the federal system uses notice pleading rather than fact pleading . . . It is enough to lay out a plausible grievance."); Fed. R. Civ. P. 8(a)(2).

---

[3] Ms. Harris argues in a footnote that, if Chroma's breach of fiduciary duty claim is not preempted by the IUTSA, it would still fail because its allegations fit within the contract claim. Arguments may not be presented for the first time in a reply brief, *see Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997), much less in an undeveloped footnote without argument or legal authority, *see Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010). This point was waived.

The court starts with the easier interference claim. Chroma never responds to any argument pertaining to an interference with business relationships claim, thereby waiving its position there. *See Gross*, 619 F.3d at 704-05. Nor has Chroma pleaded any facts giving rise to a fair inference of "some independent illegal action"—a concept of some limited definition under Indiana law—that would make this claim plausible. *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003); *see, e.g., SWL, LLC v. NextGear Capital, Inc.*, 131 N.E.3d 746, 757 (Ind. Ct. App. 2019) (defamation not illegal conduct for this claim); *Rice v. Hulsey*, 829 N.E.2d 87, 91-92 (Ind. Ct. App. 2005) (competition not illegal conduct). As a standalone claim, rather than just a theory within a claim, it may be dismissed. *See Bilek*, 8 F.4th at 587; *BBL, Inc.*, 809 F.3d at 325.

The court thus turns to the tortious interference with a contract claim. To prove such a claim, Chroma must establish (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the contract's existence; (3) the defendant's intentional inducement of a breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994). Essential to a tortious interference with a contractual relationship claim is a breach of contract. *Murat v. Temple Ass'n v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1132 (Ind. Ct. App. 2011) (affirming dismissal of tortious interference claim because there was no breach); *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 922 (Ind. Ct. App. 2002) (tortious interference with a contract claim could not succeed as a matter of law because there was no breach of contract).

One argument requires little comment. Ms. Harris says Chroma has not pleaded the "required elements" of this tortious interference claim, but that argument misses the mark. That isn't the standard. *See R3 Composites Corp.*, 960 F.3d at 942.

Derivative of this point, Ms. Harris also argues that Chroma has not pleaded allegations addressing the lack of justification for her conduct; and she builds on this argument to say her conduct,

as pleaded, could not be unjustified when its purpose was to advance her interest in competition. The facts may well bear this viewpoint out, but Chroma pleads that Ms. Harris used improper means to interfere with the company's customers. In fact, the company candidly recognizes that she had an economic interest in competing, but (as alleged) she used unlawful means to advance her interest. Utilizing protectible business information to do so would suffice, and Chroma has plausibly pleaded such misuse. Taking the allegations in the light most favorable to Chroma, as the court must, the court cannot say today that the pleadings show she was merely engaged in proper competition within the meaning of the Restatement (Second) of Torts § 768.[4]

Ms. Harris next argues that Chroma has not pleaded which contracts were breached to make this claim plausible. This point would seem to be answered by Chroma's plain allegation that the company had enforceable contracts with Local Werks, Eward Automotive Group, Elite Marketing, Acra Automotive Group, Helium Marketing, and Venture Automotive and that Ms. Harris interfered with these contracts by inducing their breach through improper means, though in fairness Chroma muddies and qualifies its allegation and thereby invites the point.

For instance, Chroma merely alleges that "one or more" of these contracts was breached—providing no notice then which contract was actually breached through improper means and which was not. The amended complaint thus guesses at a claim but falls short of providing notice of a plausible one. Chroma contends that it should not have to identify a contract that was breached because that would place an impossible burden on the company at this preliminary stage. Hardly so, not when these are Chroma's own contracts, when Chroma has the ability to determine whether a

---

[4] A person does not interfere improperly with a contract when her purpose is at least in part to advance her interest in competing with another person, but only so long as the person does not employ wrongful means or does not engage in an unlawful restraint on trade. *See* Restatement (Second) of Torts § 768. Ms. Harris cites two cases to support her position, but both cases disposed of this claim at the summary judgment stage, not the pleading stage—doing so only when the allegation of the lack of justification could not be reasonably borne by the evidence. *See Smith v. Biomet, Inc.*, 384 F. Supp.2d 1241, 1249-50 (N.D. Ind. 2005); *Harvest Life Ins. Co v. Getche*, 701 N.E.2d 871, 876-77 (Ind. Ct. App. 1998).

contract has been breached in its view, and when Rule 11 anticipates a reasonable inquiry before advancing a claim in a signed pleading. *See* Fed. R. Civ. P. 11(b)(3).

The surrounding facts underscore this concern. For example, Chroma alleges that Ms. Harris hoped to forge a new business relationship between Ewald Automotive Group and Local Werks and "poached" an important e-commerce director at Ewald Automotive by introducing her to one of the decisionmakers at Local Werks. Chroma never explains why making a competitive introduction of personnel was under the law wrongful. And Chroma pleads that Ewald Automotive remains one of the company's largest and most valuable accounts rather than pleads that this customer ended its contract. So was a contract breached at all, much less through improper means? The amended complaint never plausibly says.

As another example among those alleged, Chroma says Ms. Harris assisted Local Werks to undermine Chroma's contract with DBA Media, LLC. Chroma alleges that Local Werks repeatedly asked DBA to violate its contractual obligations with Chroma by adding Local Werks as an enterprise-level reseller. But once more nothing within these allegations indicates that there has been any breach. Chroma merely alleges that there have been "several attempts to subvert" or "repeated[] plea[s]" to violate the contract, but not that DBA Media has actually breached any agreement with Chroma. Tortious interference with a contract is not an attempt tort.

Hence the allegation that "one or more" of the contracts has been breached strikes as merely conclusory. Chroma must provide notice of a plausible grievance, not a guess at one. That said, the amended complaint has more—specific to Ewald Automotive and Local Werks [ECF 13 ¶¶ 29-31]—but any interference that might plausibly arise from these allegations involves the misuse of trade secrets or other confidential information. Such an interference claim is preempted by the IUTSA. *See HDNet LLC*, 972 N.E.2d at 924-25, 927. In short, the amended complaint lacks enough factual matter,

accepted as true, to state a plausible tortious interference claim, *see Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011); or, when it does so, the claim proves preempted. The court dismisses count 7.

      D.     *Chroma's Amended Complaint Plausibly Alleges a Conversion Claim.*

Chroma alleges that Ms. Harris committed theft or conversion under Indiana law by exerting unauthorized control over its laptop and failing to provide Chroma access to certain Chroma Google Documents accounts, folders, and files. Ms. Harris says the latter allegation proves too vague to identify the property that was converted. *See* Ind. Code § 35-43-4-3 (person commits criminal conversion when she "knowingly or intentionally exerts unauthorized control over property of another person"); *see also* Ind. Code § 34-24-3-1 (providing vehicle for civil recovery); *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004). There is a simple answer to this point, and it isn't dismissal—it is discovery. The amended complaint suffices to state a claim for conversion.

## CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the partial motion to dismiss [ECF 19], DISMISSES only the tortious interference claims (count 7), and CONVERTS the substantive allegations for injunctive relief (count 6) as part of the trade secret counts (counts 1 and 2) and the request for an injunction as a prayer for this remedy vis-à-vis these other claims.

SO ORDERED.

May 25, 2022                                              *s/ Damon R. Leichty*
                                                                     Judge, United States District Court